IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br>Dale Lee Jansma,<br><u>           Debtor       </u><br>Gordon Burich<br><br>        Plaintiff,<br><br><br>Vs.<br><br>Dale Lee Jansma,<br><br>        Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 7<br>Case No. 09 BK 07071<br>Hon. Pamela S. Hollis<br><br><br><br><br>Adversary Proceeding<br>No. 09 AP 00660 |

## MEMORANDUM OPINION

This matter comes before the Court on Dale Lee Jansma's motion to dismiss Count II of this adversary proceeding for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), made applicable via Fed. R. Bankr.P. 7012. The underlying complaint seeks a finding that Defendant Jansma's debt to Gordon Burich is nondischargeable under 11 U.S.C. § 523(a)(19). The parties were provided with an opportunity to respond and reply, and they did so timely. The Court reviewed the complaint and the papers filed, and for the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

All well-pleaded factual allegations set forth in the complaint are taken as true for purposes of deciding a motion to dismiss.

On or about December 15, 2007, Jansma contacted Burich in order to secure a

1

loan in the amount of $102,877.00. Between December 15 and December 21, 2007, Jansma and Burich met to review the details of Jansma's request. Jansma asserted to Burich that he owned several parcels of real estate with substantial equity. However, Jansma needed additional capital to finish the work on these projects so that he, Jansma, would be in a position to sell them. Jansma then took Burich on a tour of the properties he allegedly owned. While leading Burich on a driving tour of four properties Jansma purported to own, Jansma indicated to Burich that the properties had an existing equity value in excess of $3,500,000.00.

Jansma represented to Burich that in exchange for the loan, Jansma would give Burich a security interest in one of the properties. The alleged value of the secured property was $237,594.00. Burich claims, and Jansma does not refute, that these statements were false at the time they were made and were intended to deceive Burich into giving Jansma money.

Based on the abovementioned assertions of Jansma, Burich and Jansma entered into a written agreement (the "Promissory Note") on December 21, 2007. In the Promissory Note, Burich agreed to give Jansma $100,000 dollars, and Jansma agreed to pay Burich the money plus 15% interest not later than February 29, 2008. In order to secure Burich's money, Jansma granted Burich a security interest in a parcel of land purportedly valued at $237,594.00.

Jansma failed to make any payments Burich and, at this time, has still not made any payments to Burich.

In or around December, 2008, the State of Illinois, Office of the Secretary of State, initiated proceedings against Jansma for violation of the Illinois Securities Act.

A Temporary Order of Prohibition was issued by the Secretary of State on January 13, 2009 and a Final Order of Prohibition was entered on February 13, 2009. The Final Order of Prohibition read:

> 1. Respondent Dale Jansma ("Dale Jansma"), a natural person, has a last known address of 946 Old Farm Rd, Dyer, Indiana 46311.
>
> 2. Respondent Jansma Builders Inc. ("Jansma Builder") is an Indiana Corporation and maintains a business location at 946 Old Farm Rd., Dyer, Indiana, 46311.
>
> 3. Dale Jansma offered and sold Promissory Notes of Jansma Builders to Illinois Residents in excess of one million dollars ($1,000,000.00).
>
> 4. The Promissory Notes offered and sold by Dale Jansma promised interest rates between ten (10) percent to thirty (30) percent interest per annum.
>
> 5. Dale Jansma secured the Promissory Notes with real property; however the Promissory Notes far exceeded the value of the real property.
>
> 6. Several of the Promissory Notes secured by Dale Jansma were erroneous property addresses.
>
> 7. The activities described above constitute the offer and sale of a note and therefore a security as those terms are defined in Section 2.1, 2.5 and 2.5a of the Illinois Securities law of 1953 [815 ILCS 5/1 et seq].
>
> 8. Section 5 of the Act provides, *inter alia*, that all securities except those exempt under Section 3 or those offered or sold in transactions exempt under Section 4 "shall be registered either by coordination or by qualification prior . . . to their offer or sale"
>
> 9. Respondents failed to file with the Secretary of State an application of registration of the securities described above required by the Act and as a result, the security was not registered pursuant to Sect 5 of the Act prior to its offer in the State of Illinois.
>
> 10. Section 12.A of the Act provides, *inter alia*, that it shall be a violation for any person "to offer or sell any security except in accordance with the provisions of the Act"
>
> 11. Section 12.D of the Act provides, *inter alia*, that it shall be a violation for any person "to fail to file with the Secretary of State any application,

report or document required to be filed under the provisions of the Act or any rule or regulation made by the Secretary of State pursuant to the Act"

12. By virtue of the foregoing, Respondents violated Sections 12.A and 12.D of the Act.

## LEGAL DISCUSSION

In the Supreme Court's most recent discussion of the standard applied to a motion to dismiss, the Court started "by taking note of the elements a plaintiff must plead to state a claim...." *Ashcroft v. Iqbal,* 129 S. Ct 1937, 1947 (2009). In this instance, the motion to dismiss presents the Court with a case of first impression, which requires an extended discussion of Congress's intent and purpose in adopting § 523(a)(19) of the Bankruptcy Code. The foundation of any statute is, of course, its text, which is where the Court begins its discussion.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-....

(19) that--

(A) is for--

>   (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

>   (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from--

>   (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

>   (ii) any settlement agreement entered into by the debtor; or

4

> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

In his Motion to Dismiss, Jansma argues that Burich fails to meet subsection (B) of § 523(a)(19) because the Order of Prohibition does not assign a debt owed, so a claim under § 523(a)(19) cannot survive. At first blush, it does appear that § 523(a)(19) requires the plaintiff to satisfy both subsection (A) and subsection (B). If that were the case, the plaintiff would be required to plead two elements: (1) a violation of a securities law, either state or federal, or common law fraud in connection with the sale of a security; and (2) the debt arose from some form of settlement agreement, or judicial or administrative decree. Originally read as it was drafted in the Sarbanes-Oxley Act of 2002, subsection (B) required the debt "results from . . . ," meaning that some sort of pre-petition judicial, administrative or settlement action had occurred. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.24B, [523-128] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In 2005, however, Congress amended the statute as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to "results, before, on, or after the date on which the petition was filed, from . . . ." This change expanded the temporal range for the plaintiff to receive a judgment beyond the filing of the bankruptcy petition. As the court in *In re Chan*, 355 B.R. 494, 504 (E.D. Penn. 2006) stated,

> the phrase [results, before, on, or after the date on which the petition was filed, from] was intended to make it clear that a debt arising under the federal securities laws or as a result of fraud in connection with the sale of a security may be determined nondischargeable under § 523(a)(19) even if the liability was not fixed prior to the commencement of the bankruptcy case. The additional phrase merely insures that the efficacy of the discharge exception is not dependent upon the timing of the liability determination; *i.e.*, dischargeability will not turn on whether the creditor or the debtor wins the "race to the courthouse."

5

*In re Chan*, 355 B.R. 494, 504 (E.D. Penn. 2006). *See also Mansfield v. Bastrom*, 2005 WL 1798270, *1 (W.D.Wash.2005) (holding that the BAPCPA amendment to § 523(a)(19) "eliminates the requirement of a prefiling judgment"); *In re Weilein*, 328 B.R. 553, 555 (Bankr.N.D.Iowa 2005), *reconsidering* 319 B.R. 175 (Bankr.N.D.Iowa 2004) (under pre-2005 version of § 523(a)(19), judgment, order or settlement agreement must have been in existence pre-bankruptcy for discharge exception to apply).

As discussed in the next section, the legislative history at the time of its enactment suggests that one focus of § 523(a)(19) was decrees, judgments or settlements but the more important emphasis was to "hold accountable those who violate securities laws." *See* S.REP. NO. 107-146 at 10 (2002). The BAPCPA amendment in 2005 continues that theme, but downplays the importance of having a judgment at the time the debtor files the bankruptcy petition.

   *a. The Legislative History of § 523(a)(19)*

When Congress passed the Sarbanes-Oxley Act of 2002, it contained an amendment to § 523 of the Bankruptcy Code in Title VIII of the Act. Title VIII of the Sarbanes-Oxley Act of 2002 is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "CCFA Act"). In creating the CCFA Act, Congress listed as one of its purposes: "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." S.REP. NO. 107-146, at 2 (2002). In describing the problem faced by defrauded investors, the Committee Report states:

> Current bankruptcy law may permit [securities law violators or those who commit actual fraud in connection with the sale of a security] to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to *hold accountable those who violate securities laws.*

6

*See* S.REP. NO. 107-146 at 10 (2002)(emphasis added).

One of the key components to preventing the discharge of securities law violations was Bankruptcy Code § 523(a)(19), which was Section 803 of the CCFA Act. Titled "Debts nondischargeable if incurred in violation of securities fraud laws," Senator Patrick Leahy explained that the addition of § 523(a)(19) was to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover their losses." 148 CONG. REC. S1787 (daily ed. March 12, 2002) (statement of Senator Leahy); *see also* S.REP. NO. 107-146 at 12 (2002). He continued to emphasize the need for bankruptcy reform of debts incurred from violations of securities laws in the section-by-section analysis of the bill, where he stated: "This provision [§ 523(a)(19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible."148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy).

b. *The Effect of the 2005 BAPCPA Amendment on § 523(a)(19)*

Although the legislative history of the CCFA Act was robust, there is no legislative history of the amendment in BAPCPA. The plain text of the amendment, though, provides the Court with a clear understanding of the intent of Congress rendering the legislative history of the amendment unnecessary.[1] By amending the statute to include "before, on, or after the date on which the petition was filed," Congress furthered its goal of punishing those who commit securities-related misdeeds by expanding not only the

---

[1] "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.* 541 U.S. 246, 252 (2004)(citations omitted).

7

timing of the settlement, judgment, decree or order but also the forum in which the creditor can seek such a finding.

After the amendment to § 523(a)(19) in BAPCPA, the bankruptcy court can satisfy the requirements of either § 523(a)(19)(B)(i) or (B)(iii) by conducting a federal judicial proceeding and issuing "[a] judgment, order, consent order, or decree" or "[a] . . . court order . . . for damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor." *See* 11 U.S.C. § 523(a)(19)(B). This is the same type of determination that bankruptcy courts already make in subsections (2), (4) and (6) of § 523.

*Collier* recognized this possibility after the amendment and noted that "[a] consequence of the amendment is the possibility that the underlying federal or state securities law violation [or common law fraud . . . in connection with the sale of a security] may be tried in the bankruptcy court as part of the Court's determination of dischargeability." 4 COLLIER ON BANKRUPTCY ¶ 523.24B, [523-129] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

The Court agrees with such an expanded interpretation of § 523(a)(19) and, therefore, in order to survive a motion to dismiss, a creditor must only plead sufficient allegations that the pre-petition conduct of the debtor constituted a "violation of any of the Federal Securities laws . . . any of the State securities laws, or any regulation or order issued under such Federal or State laws; or common law fraud . . . in connection with the purchase or sale of any security. . . ."

Having determined that the order or judgment required in § 523(a)(19)(B) may be entered in the instant proceeding, the only pleading requirements for Burich to survive a

8

motion to dismiss arise solely out of subsection (A). Burich must provide the Court with factual allegations that support a probable likelihood that Jansma committed a state or federal securities law violation; or common law fraud, deceit or manipulation in connection with the purchase or sale of any security.

### c. The Motion to Dismiss is Denied.

When deciding a motion to dismiss, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Viewed in this light, the allegations made by Burich offer support for a finding of non-dischargeability under § 523(a)(19). Burich's complaint properly pled common law fraud in connection with the sale of a security and a violation of the state securities laws, meeting the requirements of subsection § 523(a)(19)(A)(i) and (A)(ii).

Burich's complaint, along with the attached exhibits, contains an Order of Prohibition, issued by the Office of the Secretary of the State, which prevents Jansma from selling promissory notes, of the exact same type that he sold to Burich, because they were unregistered securities. Additionally, Burich asserts that Jansma made factual representations about properties he owned and their purported values, which, Burich states, were false and meant to induce Burich to enter into the Promissory Note agreement with Jansma. Read together, the factual assertions made by Burich, along with the Order of Prohibition tend to show that Jansma intentionally defrauded Burich in connection with the sale of a security and violated a securities law of the State of Illinois, therefore satisfying the pleading requirements of § 523(a)(19)(A)(i) and (ii).

Jansma essentially argues that the factual content of the complaint is not enough because he believes that subsection (B) is not satisfied by the factual assertions or the

Order of Prohibition. This argument misses the point of section *b.*, above. This Court can satisfy subsection (B) of § 523(a)(19) by issuing a judgment that Jansma violated subsection (A). Therefore, Burich does not need to provide factual content that subsection (B) is satisfied.

Burich must plead sufficient "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Ginsberg*, 2009 WL 2166688 *2 (Bankr. N.D. Ill. 2009). Burich has done so through his factual assertions as to Jansma's statements used to induce him into entering the Promissory Note agreement and the Order of Prohibition. The persuasiveness of those allegations and the Order of Prohibition does not arise from a relationship to subsection (B) but to subsection (A), where Burich must show that Jansma has committed a violation of the state or federal securities laws, or common law fraud in connection with the sale of a security.

For the reasons stated above, the Court denies the motion to dismiss.

ENTERED:

Date: **JAN 21 2010**   _____
                        PAMELA S. HOLLIS
                        United States Bankruptcy Judge